UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LORETTA LOIS BICKERSTAFF APPEARING HEREIN THROUGH HER LEGALLY APPOINTED AGENT IN FACT AND MANDATARY, GERALD GREGORY BICKERSTAFF | CIVIL ACTION |
| VERSUS | NO. 15-3639 |
| CAROLYN KRIDER BICKERSTAFF, ET AL. | SECTION "R" (3) |

## ORDER AND REASONS

Plaintiff Loretta Bickerstaff filed this state-law property dispute against her sister-in-law Carolyn Bickerstaff, attorney Jule Herbert, and Jule R. Herbert, Jr., P.C.[1] Defendants Jule Herbert and Jule R. Herbert, Jr., P.C. move the Court to dismiss plaintiff's claims against them for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[2] Herbert, the individual, is an Alabama resident. Herbert, the professional corporation, is incorporated and has its principal place of business in Alabama. Because neither defendant has the requisite minimum contacts with Louisiana, the Court grants the motion to dismiss.

## I. BACKGROUND

This diversity action, for defendants' alleged negligence, fraud, and breach of fiduciary duties, arises out of a property ownership dispute. Plaintiff Loretta Bickerstaff contends that she is the valid legal owner of a beach house in Gulf Shores, Alabama. The

---

[1] *See generally* R. Doc. 1.

[2] R. Doc. 8.

facts, as alleged in plaintiff's complaint and supplemented by the parties' briefs and exhibits, are as follows.

Plaintiff purchased the Alabama beach house in July 1993.[3] In February 2010, plaintiff granted her brother, Richard Bickerstaff, power of attorney, giving him management and control of her affairs.[4] A November 13, 2010 "Assumption Warranty Deed," prepared by defendant Jule Herbert in Alabama, but executed before Roxana Ross in Jefferson Parish, Louisiana, appears to transfer ownership of the beach house from plaintiff to Richard Bickerstaff for ten dollars.[5] Herbert contends that Richard Bickerstaff's son-in-law, Charles "Benny" Hausknecht, Jr., asked him to prepare the Assumption Warranty Deed.[6] According to Herbert, his office (defendant Jule R. Herbert, Jr., P.C.) prepared the Assumption Warranty Deed and forwarded it to Hausknecht in Louisiana.[7] Plaintiff and Richard Bickerstaff executed the contract before Roxanna Ross in Louisiana on November 13. Herbert's office then recorded the contract in the public records of Baldwin County, Alabama on December 7, 2010.[8] According to

---

[3]    R. Doc. 1 at 3 ¶ 13.

[4]    *Id.* at ¶ 14.

[5]    R. Doc. 10, Exhibit A-1.

[6]    R. Doc. 8-2 at 1 ¶ 3.

[7]    *Id.* at 1-2 ¶ 4.

[8]    *Id.* at 2 ¶ 5.

plaintiff, she did not knowingly transfer ownership of the beach house in November 2010 or receive any money from the alleged transfer.[9]

Following the 2010 explosion of British Petroleum's Deepwater Horizon drilling rig in the Gulf of Mexico, Richard Bickerstaff allegedly filed a BP claim and attempted to collect settlement proceeds for the loss of rental revenue and diminished value of the beach house. According to plaintiff, on October 24, 2013, Herbert assisted Richard Bickerstaff in pursuing his BP claim by writing a letter to Richard, which stated,

> In writing this letter, I am confirming that my office prepared an Assumption Warranty Deed for the property referenced below. . . . Although the stated consideration was minimal, the appraised value at the time of this transaction—and actual consideration for the transfer[—]was $413,100.00, and the transfer deed tax was duly reported and paid based on that amount.[10]

Hausknecht appears to have used this letter in his communications with a BP claims reviewer.[11] According to plaintiff, the BP claim records also show two "HUD-1 Settlement Statements" that Herbert prepared. These settlement statements reflect the purported transfer of the beach house from plaintiff to Richard Bickerstaff in November 2010.[12]

Plaintiff sued Richard Bickerstaff in Louisiana state court on May 16, 2014, attacking the November 2010 Assumption Warranty Deed as invalid. One week later, on May 23, 2014, Richard Bickerstaff and his wife, defendant Carolyn Bickerstaff, executed a "Second Mortgage" on the beach house. By the Second Mortgage, Richard Bickerstaff, as mortgagor, purported to grant an interest in the beach house to Carolyn Bickerstaff, as

---

[9] R. Doc. 10, Exhibit A.

[10] R. Doc. 10, Exhibit A-3.

[11] R. Doc. 10, Exhibit A-8.

[12] R. Doc. 10, Exhibits A-4, A-5.

plaintiff, she did not knowingly transfer ownership of the beach house in November 2010 or receive any money from the alleged transfer.[9]

Following the 2010 explosion of British Petroleum's Deepwater Horizon drilling rig in the Gulf of Mexico, Richard Bickerstaff allegedly filed a BP claim and attempted to collect settlement proceeds for the loss of rental revenue and diminished value of the beach house. According to plaintiff, on October 24, 2013, Herbert assisted Richard Bickerstaff in pursuing his BP claim by writing a letter to Richard, which stated,

> In writing this letter, I am confirming that my office prepared an Assumption Warranty Deed for the property referenced below. . . . Although the stated consideration was minimal, the appraised value at the time of this transaction—and actual consideration for the transfer[—]was $413,100.00, and the transfer deed tax was duly reported and paid based on that amount.[10]

Hausknecht appears to have used this letter in his communications with a BP claims reviewer.[11] According to plaintiff, the BP claim records also show two "HUD-1 Settlement Statements" that Herbert prepared. These settlement statements reflect the purported transfer of the beach house from plaintiff to Richard Bickerstaff in November 2010.[12]

Plaintiff sued Richard Bickerstaff in Louisiana state court on May 16, 2014, attacking the November 2010 Assumption Warranty Deed as invalid. One week later, on May 23, 2014, Richard Bickerstaff and his wife, defendant Carolyn Bickerstaff, executed a "Second Mortgage" on the beach house. By the Second Mortgage, Richard Bickerstaff, as mortgagor, purported to grant an interest in the beach house to Carolyn Bickerstaff, as

---

[9] R. Doc. 10, Exhibit A.

[10] R. Doc. 10, Exhibit A-3.

[11] R. Doc. 10, Exhibit A-8.

[12] R. Doc. 10, Exhibits A-4, A-5.

mortgagee, to secure prompt payment of a $241,534 debt Richard allegedly owed to Carolyn. Herbert also prepared this Second Mortgage, and Richard and Carolyn executed the contract in Herbert's office in Baldwin County, Alabama on May 23, 2014.[13] According to Herbert, he drafted this contract again at the insistence of Benny Hausknecht.[14] Herbert recorded the Second Mortgage in the Baldwin County public records on June 6, 2014.[15] According to plaintiff, this Second Mortgage is a sham and "part of [a] scheme to deprive [plaintiff] of the beach house."[16]

On August 19, 2015, plaintiff, through her current legally appointed agent-in-fact and mandatary Gerald Gregory Bickerstaff, filed this lawsuit, alleging defendants Carolyn Bickerstaff, Jule Herbert, and Jule Herbert's professional corporation are liable to her for "negligence, fraud, collusion, breach of fiduciary duties, and breach of contract."[17] Plaintiff, considering herself to be Herbert's client, contends that Herbert "completely disregarded" their attorney-client relationship and breached the "fiduciary, legal, and ethical duties" he owed to plaintiff by repeatedly engaging in conflicted transactions regarding her beach house property.[18] Plaintiff asks the Court to rescind the Second

---

[13]   R. Doc. 10, Exhibit A-6.

[14]   R. Doc. 8-2 at 2 ¶ 6-7.

[15]   *Id.* at ¶ 8.

[16]   R. Doc. 1 at 4 ¶ 21.

[17]   *Id.* at 3.

[18]   *See id.* at 3-6.

Mortgage, order defendants to cancel the Second Mortgage from the Baldwin County public records, and award plaintiff damages, including pain and suffering.[19]

Defendants Herbert and Herbert's professional corporation, both citizens of Alabama,[20] now move the Court to dismiss plaintiff's claims against them for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[21] Herbert submits an affidavit, in which he declares, among other things:

- Herbert is not licensed to practice law in Louisiana;

- Herbert does not solicit business in Louisiana and did not solicit Benny Hausknecht's referral of work for the contracts at issue here;

- The services provided by Herbert's office for the contracts at issue were performed and carried out in Alabama; and

- Herbert has no knowledge that the Second Mortgage executed in favor of Carolyn Bickerstaff is a sham or that Richard Bickerstaff is not the legal owner of the beach house by virtue of the November 2010 Assumption Warranty Deed.[22]

In opposition to the motion to dismiss, plaintiff submits her own affidavit. Plaintiff declares, among other things:

- Plaintiff did not knowingly transfer ownership of her beach house in November 2010 and did not learn about the purported transfer until "several years" later;

---

[19]   R. Doc. 1 at 4, 10.

[20]   *See id.* at 2.

[21]   *See* R. Doc. 8.

[22]   R. Doc. 8-2 at 2-3.

- Plaintiff "thought defendant Jule R. Herbert should have contacted [her]" about the legal services he rendered to others in connection with the beach house;

- "The Herbert defendants knew or should have known that the Second Mortgage executed in favor of Carolyn Bickerstaff was a sham"; and

- "The Herbert defendants knew or should have known that Richard Bickerstaff was not the legal owner of the property transferred in the Assumption Warranty Deed in 2010 and that [plaintiff has] been the legal owner of the beach house since . . . 1993."

## II.   LEGAL STANDARD

Personal jurisdiction is essential to the jurisdiction of a district court—without it, the court is "powerless to proceed to . . . adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (quoting *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)).  When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden to show that personal jurisdiction exists. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  When the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a *prima facie* case that jurisdiction exists; "[p]roof by a preponderance of the evidence is not required." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  The allegations of the complaint, except as controverted by opposing affidavits, are taken as true, and all conflicts in the facts are resolved in favor of the plaintiff. *Id.*; *Revell*, 317 F.3d at 469.  In making its determination, the court may consider "affidavits, interrogatories, depositions, oral testimony, or any

combination of the recognized methods of discovery." *Revell*, 317 F.3d at 469 (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).

A court has personal jurisdiction over a defendant if (1) the forum state's long-arm statute confers personal jurisdiction over the defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Id.* Because Louisiana's long-arm statute, La. Rev. Stat. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's inquiry collapses into a single question: whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Mar. Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. Rev. Stat. § 13:3201(B)); *Alonso v. Line*, 846 So. 2d 745, 750 (La. 2003). The exercise of personal jurisdiction over a defendant satisfies due process when (1) the defendant "has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state;" and (2) the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Revell*, 317 F.3d at 470 (quoting *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999)).

There are two ways to establish minimum contacts: specific jurisdiction and general jurisdiction. *See id.* General jurisdiction is not at issue here.[23] Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (quoting *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th

---

[23] R. Doc. 10 at 3 (arguing only specific jurisdiction).

Cir. 2000)); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). Minimum contacts may be established by actions, or even a single act, by the nonresident defendant whereby it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The non-resident's 'purposeful availment' must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Importantly, "[t]he unilateral activity of [a plaintiff] who claim[s] some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 222 (5th Cir. 2012) (quoting *Hanson*, 357 U.S. at 253).

The Fifth Circuit has synthesized the test for specific jurisdiction into a three-step inquiry:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002)). "If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Id.*

## III.     DISCUSSION

Having reviewed plaintiff's complaint, the parties' briefs, and the affidavits and exhibits submitted with those briefs, the Court finds that it lacks personal jurisdiction over defendants Jule R. Herbert and his professional corporation. The extent of Herbert's contacts with the state of Louisiana are as follows.[24]

In 2010, Benny Hausknecht, a Louisiana resident,[25] contacted Herbert, in Alabama, about preparing an assumption warranty deed regarding the beach house, which is located in Alabama.[26] Hausknecht contacted Herbert on behalf of Hausknecht's father-in-law, Richard Bickerstaff, another Louisiana resident.[27] Herbert prepared the Assumption Warranty deed in Alabama and mailed it to Hausknecht in Louisiana.[28] After the Assumption Warranty Deed was executed before a notary in Louisiana, someone (presumably Hausknecht or Richard Bickerstaff) sent the executed deed back to Herbert

---

[24]     Plaintiff does not contend that anyone employed by Jule R. Hebert, Jr., P.C. other than Herbert acted as the corporation's agent in its contacts with Louisiana. Thus, the Court's analysis of Herbert's contacts addresses whether the Court has personal jurisdiction over him and his professional corporation.

[25]     Though plaintiff fails to explicitly state that Hausknecht is a Louisiana resident, plaintiff notes that "Hausknecht lives next door to defendant Carolyn Bickerstaff," R. Doc. 10 at 7, and according to plaintiff's complaint, Carolyn Bickerstaff is domiciled in the Jefferson Parish, Louisiana. R. Doc. 1 at 2. ¶ 2.

[26]     R. Doc. 8-2 at 1 ¶ 3.

[27]     R. Doc. 10-2 at 3 (listing Richard Bickerstaff's address).

[28]     R. Doc. 8-2 at 1 ¶ 4.

in Alabama. At some point, Herbert prepared "HUD-1 Settlement Statements" regarding the property transfer.[29]

Three years later, on October 24, 2013, Herbert mailed a letter from his office in Alabama to Richard Bickerstaff in Louisiana.[30] The letter states that Herbert prepared the November 2010 Assumption Warranty Deed and that the "actual consideration for the transfer [of ownership] was $413,100.00."[31] Hausknecht then attached Herbert's letter to Richard Bickerstaff to a letter Hausknecht wrote a claims reviewer for the BP settlement.[32]

In May 2014, Hausknecht again contacted Herbert on behalf of Richard Bickerstaff.[33] Hausknecht asked Herbert to draft a second mortgage on the beach house in Alabama in favor of Richard's wife, Carolyn Bickerstaff.[34] Herbert prepared the contract, and Richard and Carolyn Bickerstaff executed the Second Mortgage in Herbert's office in Baldwin County, Alabama.[35]

Under similar circumstances, courts have found that the nonresident defendants lacked sufficient contacts with the forum state to give rise to personal jurisdiction. For example, in *Holt Oil & Gas Corp. v. Harvey*, the Fifth Circuit found that the defendant,

---

[29]    R. Doc. 10, Exhibits A-4, A-5.

[30]    R. Doc. 10, Exhibit A-3.

[31]    *Id.*

[32]    R. Doc. 10, Exhibit A-8.

[33]    R. Doc. 8-2 at 2 ¶ 6.

[34]    *Id.*

[35]    *Id.* at ¶ 7; R. Doc. 10, Exhibit A-6, at 4.

an Oklahoma resident, had (1) contracted with a Texas resident, (2) mailed the parties' final contract to Texas, (3) mailed three contractual payments to Texas, and (4) "engaged in extensive telephonic and written communications" with the Texas plaintiff.  801 F.2d 773, 777-78 (5th Cir. 1986).  In holding that these contacts were insufficient to vest the Texas district court with personal jurisdiction, the Fifth Circuit explained:

> [M]erely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction. . . . Our conclusion is further bolstered by the fact that performance of the contract was centered in Oklahoma rather than Texas.  Given that the material performance occurred in Oklahoma, the fact that [the defendant] mailed payments to Texas does not weigh heavily in our determination.  Finally, the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law.  These communications to Texas rested on nothing but "the mere fortuity that [the plaintiff] happens to be a resident of the forum."

*Id.* at 778 (citations omitted).

The Fifth Circuit recently relied on its holding in *Holt Oil* in finding that a Texas partnership and limited liability company did not have sufficient contacts with Louisiana to support the exercise of personal jurisdiction.  *Brammer Eng'g, Inc. v. E. Wright Mountain Ltd. P'ship*, 307 F. App'x 845 (5th Cir. 2009).  In *Brammer Engineering*, the Fifth Circuit reiterated that "the fact that defendants may have been parties to contracts with Louisiana residents, including [the plaintiff], does not give rise to jurisdiction."  *Id.* at 847-48.  The court also held that the defendants' communications with Louisiana residents and requests for information to be sent to the defendants were "at most, merely incidental to performance of the Texas-centered contract and resulted only from the coincidence that [plaintiff] is a Louisiana resident.  Such incidental requests . . . do not evidence defendants' purposeful availment of the benefits and protections of Louisiana law."  *Id.* at 848.

In *Advance Petroleum Services, Inc. v. Cucullu*, the Louisiana Third Circuit Court of Appeal held that the trial court lacked personal jurisdiction over a Texas attorney who represented a Louisiana resident and allegedly committed malpractice. 614 So. 2d 878, 879 (La. App. 3 Cir. 1993). The court explained that the attorney was hired by a Louisiana resident while the attorney lived and practiced in Texas, the attorney did not advertise in Louisiana or solicit work there, and the attorney performed all of the work associated with the Louisiana resident in Texas. *Id.* at 880. These contacts were insufficient to allow the state trial court to exercise personal jurisdiction.

The material facts of this case are indistinguishable from those in *Holt Oil*, *Brammer Engineering*, and *Advance Petroleum*. Plaintiff does not dispute that Herbert lives and works in Alabama. Plaintiff also does not dispute that Herbert is not licensed to practice in Louisiana. Herbert does not solicit business in Louisiana. Here, Herbert was solicited by a Louisiana resident, Hausknecht, to perform legal work in Alabama regarding property located in Alabama. Though plaintiff alleges that Herbert directed communications to Louisiana on two occasions (mailing the warranty deed to Hausknecht in November 2010 and mailing the letter about his work on the warranty deed to Richard Bickerstaff in October 2013), this is insufficient to constitute purposeful availment of Louisiana law. *See Holt Oil*, 801 F.2d at 778; *Brammer Eng'g*, 307 F. App'x at 848. If the mere exchange of communication sufficed, a court could exercise jurisdiction "based only on the fortuity that one of the parties happens to reside in the forum state." *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). But as noted, "fortuitous[] or attenuated contacts are not sufficient to establish jurisdiction." *Id.*

Plaintiff's arguments to the contrary are unintelligible or otherwise meritless. Plaintiff appears to argue that, notwithstanding well-established rules of professional conduct, merely because Herbert drafted the Assumption Warranty Deed and the Second Mortgage of the beach house, every person involved in those contracts was or is Herbert's client. In other words, plaintiff contends that plaintiff is Herbert's client—even though plaintiff did not know who Herbert was until "several years" later—because she owned the beach house before the purported transfer to Richard Bickerstaff;[36] that Richard Bickerstaff is Herbert's client because "it was on [Richard's] behalf that the Warranty Deed was drafted";[37] that "defendant Carolyn Bickerstaff is Herbert's client [because] she was the 'mortgagee' on the beach house" in the Second Mortgage; and finally, that Benny Hausknecht is Herbert's client because he originally asked Herbert to prepare the beach house contracts.[38] Thus, according to plaintiff, Herbert has four clients in Louisiana.

Even if this is true, the Court does not have personal jurisdiction over Herbert. In analyzing jurisdiction, the Court must focus on "the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014). When the only basis for personal jurisdiction is a defendant's "relationship with a plaintiff or third party," personal jurisdiction does not exist. *Id.* at 1123.

---

[36] R. Doc. 1 at 3 ¶ 11 ("Loretta . . . was owed fiduciary, legal, and ethical duties by the Herbert defendants, as the Herbert defendants took multiple actions concerning property she owned . . . ."); R. Doc. 10, Exhibit A at 2 ¶¶ 3, 8 ("After discovering what legal services were rendered by the Herbert defendants concerning my beach house to others . . . I thought Jule R. Herbert should have contacted me about said legal services.").

[37] *Id.* at 6.

[38] *Id.* at 7.

Plaintiff also emphasizes Herbert's "role" in Richard Bickerstaff's filing allegedly fraudulent BP claims. Plaintiff's arguments here go more toward the merits of her claims than whether this Court may exercise jurisdiction over Herbert. These arguments are therefore not helpful to the Court's analysis. For example, plaintiff notes that Herbert prepared HUD-1 Settlement Statements, but does not contend that he prepared these documents anywhere other than in Alabama. Plaintiff also highlights purported discrepancies between two settlement statements, contending that this reveals Herbert's "efforts to violate established real estate laws."[39] Regardless, these alleged discrepancies do not confer personal jurisdiction over Herbert in Louisiana.

Finally, plaintiff appears to argue that the method by which Herbert, along with Richard and Carolyn Bickerstaff, executed the Second Mortgage on the beach house supports this Court's exercise of jurisdiction. Mischaracterizing Herbert's arguments for dismissal, plaintiff argues, "Herbert relies upon the fact that the Warranty Deed was executed in Louisiana to attempt to escape the Court's jurisdictional reach; does the opposite apply if another Herbert document, the Second Mortgage, was executed in Alabama?"[40] As repeatedly noted, the Court's exercise of personal jurisdiction depends on Herbert's contacts with *Louisiana*. That Herbert oversaw the execution of the Second Mortgage in Alabama, rather than Louisiana, supports Herbert's argument that his work was limited to his home state and that the Court lacks personal jurisdiction.[41]

---

[39]    *Id.* at 9.

[40]    *Id.* at 11.

[41]    Even though plaintiff does not argue it, the Court has considered *Calder v. Jones*, 465 U.S. 783 (1984), and concludes that it does not warrant finding personal jurisdiction over Herbert. Again, there is no evidence that Herbert's actions were targeted at *Louisiana*, rather than Alabama. "The 'effects' test in *Calder* does not supplant the need

Accordingly, the Court finds that plaintiff has not made a *prima facie* case that jurisdiction exists. Because plaintiff has not shown that Herbert has the requisite minimum contacts with Louisiana, the Court need not consider whether the exercise of personal jurisdiction is fair and reasonable.

IV. **CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss. The Court DISMISSES WITHOUT PREJUDICE plaintiff's claims against Jule R. Herbert, and Jule R. Herbert, Jr., P.C. for lack of personal jurisdiction.

New Orleans, Louisiana, this  7th  day of April, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

to demonstrate minimum contacts that constitute purposeful availment[,]" *see Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009), and "the focal point . . . of the harm suffered" by plaintiff is Alabama, because the property of which she was allegedly fraudulently deprived is located there. *See Calder*, 465 U.S. at 789.